OAK FOREST, INC., et al., Plaintiffs,

and

Peoples Federal Savings and Loan Association of South Carolina, Third–Party Plaintiff,

v.

The UNITED STATES, Defendant,

and

Daniel L. Patrick, et al., Third–Party Defendants.

No. 90–102L.

United States Claims Court.

Oct. 15, 1992.

---

Barbara Wilson Krug, Myrtle Beach, S.C. and Henry Dargan McMaster, Columbia, S.C., for plaintiffs.

Richard Ward, pro se.

Victoria T. Vaught, Conway, S.C., for third-party plaintiff.

Stuart B. Schoenburg, Washington, D.C., for defendant. Susan Taylor Wall, Charleston, S.C., for third-party defendants.

## OPINION

BRUGGINK, Judge.

Pending are motions of Whitfield Engineers Co., Inc. ("Whitfield"), and Sur–Tech, Inc. ("Sur–Tech") to quash notice. The motions raise a question as to the application of RUSCC 14, dealing with third-party practice. The question arises in the context of a claim for the taking of real property, specifically, the Oak Forest subdivision of Myrtle Beach, South Carolina. The claim is asserted by plaintiffs, Oak Forest, Inc., J. Bice Ward, Carl J. Ward, William E. Ward, Carl J. Ward & Sons, Inc., Richard Ward, and William E. Ward & Sons, Inc., against the United States Government acting through Myrtle Beach Air Force Base. Third-party plaintiff, Peoples Federal Savings and Loan Association of South Carolina, holds mortgages on certain lots within Oak Forest.

On April 26, 1991, we denied the government's motion to dismiss for lack of jurisdiction, finding that there was jurisdiction to consider a claim either of a temporary taking of the land directly affected by the surveys, or of a taking due to loss of access to other land. Because a contemporaneous quiet title action involving Oak Forest real estate was then pending in the District Court of South Carolina, these proceedings were suspended until the district court acted, in the hope that its decision would resolve some of the factual issues present here.[1] Unfortunately, no resolution occurred, because the parties to the district court litigation agreed to a consent

---

1. *Oak Forest, Inc. v. United States,* 23 Cl.Ct. 90 (1991).

order that specifically precluded its application to any issue pending in this case. Proceedings were resumed in this court thereafter.

Pursuant to RUSCC 14(a)(1),[2] defendant moved to send notice of the present action to Whitfield and Sur–Tech, the respective contractor and subcontractor responsible for surveying the property on the government's behalf. Defendant alleged that the surveys prepared and recorded by Sur–Tech are the same surveys complained of by plaintiffs and third-party plaintiffs. Moreover, the government contended that it is "presently considering pursuing claims against" Whitfield and Sur–Tech. The court granted the government's motion and notice was served on the two companies on July 6, 1992.

Whitfield and Sur–Tech have filed motions to quash, contending, in effect, that notice serves no purpose. They argue that persons merely noticed and not joined in a cause of action cannot be bound by the judgment resulting therefrom despite their knowledge of the suit and opportunity to intervene. They support this argument with references to *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), and *RSH Constructors, Inc. v. United States*, 20 Cl.Ct. 1 (1990), in which Judge Futey applied *Martin* to Rules 14(a)(1) and 14(c)(1).[3] Judge Futey held that these two RUSCC provisions are not fully compatible with *Martin*. *RSH Constructors*, 20 Cl.Ct. at 7. The government opposes these motions. It contends that notice was proper under Rule 14(a)(2),[4] that

*Martin* is distinct from and inapplicable to the procedure at issue here, and that if *Martin* does apply, then this case falls within an exception recognized in *Martin*.

## DISCUSSION

■ At the outset, the court notes that although defendant's primary support for service of notice is premised on the applicability of Rule 14(a)(2), notice was sought and effected only under Rule 14(a)(1). Rules 14(a)(1) and 14(a)(2) share some superficial similarities and appear within the same subsection to the same Rule, but they do not describe the same procedure. Rule 14(a)(1) provides for mere *notification* of nonparties on motion of either party so that the nonparty might have formal awareness of the proceedings and come forward to participate in them, if the nonparty wishes. *See Hardin County Sav. Bank v. United States*, 102 Ct.Cl. 815, 821 (1945). Rule 14(a)(2) provides for the court's issuance of a *summons*, whereby an entity against whom the United States has a claim is made a third-party defendant. Under Rule 14(a)(1), the noticed entity remains a nonparty until it appears voluntarily before the court and asserts its rights in some party capacity. Under Rule 14(a)(2), however, the nonparty becomes a party immediately upon issuance of notice and service of summons. The government's attempt to recast its previous motion as one made pursuant to RUSCC 14(a)(2) is therefore incorrect, as is its ref-

---

**2.** Rule 14(a)(1) provides:

"The court, on its own motion or on the motion of a party, may notify any person with legal capacity to sue and be sued and who is alleged to have an interest in the subject matter of any pending action to appear as a party and assert an interest, if any, therein."

**3.** Rule 14(c)(1) provides:

If the court, on its own motion or on the motion of a party, orders any third person to be notified pursuant to subdivision (a)(1) of this rule, the clerk shall issue an original and 1 copy of the notice for each third person to be notified. The notice shall contain the names of the parties and a statement of the time within which such third person may

appear and shall state that in case the third party fails to appear and assert a claim in the subject matter of the action, the claim or interest of the third party therein shall forever be barred. The notice shall indicate that it is accompanied by a copy of the pleadings, which shall be attached by the moving party.

**4.** Rule 14(a)(2) provides:

On motion of the United States, the court may summon any third person against whom the United States may be asserting a claim or contingent claim for the recovery of money paid by the United States in respect of the transaction or matter which constitutes the subject matter of the suit to appear as a party and defend the third party's interest, if any, in such suit.

erence to Whitfield and Sur–Tech as third-party defendants.

A brief overview of the modern development of third-party practice in the Claims Court will be helpful. Rules 14(a)(1) and 14(a)(2) had their genesis in the Contract Settlement Act of 1944, ch. 358, § 14, 58 Stat. 663 (current version at 41 U.S.C. § 114(b) (1987)) ("§ 114(b)"). Section 114(b), while not a model of clarity, appears to draw a distinction between the third party practice available to both parties, and that available only to the United States. The first sentence of § 114(b) allows either the plaintiff or the defendant to "summon" third persons by notifying them of the existence of the suit:

> The Court of Claims, on motion of either of the parties, or on its own motion, may summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and defend their interests, if any, in such suits or proceedings....

Contract Settlement Act of 1944 § 14(b), *see also* 41 U.S.C. § 114(b).[5] The Act goes no further to spell out the implications of this type of summons.

In the third and fourth sentences, § 114(b) provides for a related device that can be invoked only by the United States. This device contains two parts. The first part permits notice to third persons potentially having claims against the United States while the second permits a summons to be served on third persons against whom the United States potentially has a claim:

> The United States Claims Court may, upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having possible interests therein, *notify* such persons to appear to assert and defend such interests. Upon failure so to appear, any and all claims or interests in claims of any such person *against the United States*, in respect of the subject matter of such suit or proceeding, shall forever be barred and the court shall have jurisdiction to enter judgment pro confesso upon any claim or contingent claim asserted *on behalf of the United States against* any person who, having been duly *served with summons*, fails to respond thereto, to the same extent and with like effect as if such person had appeared and had admitted the truth of all allegations made on behalf of the United States.

Contract Settlement Act of 1944 § 14(b) (emphasis added), *see also* 41 U.S.C. § 114(b). The first portion of this excerpt thus allows the court to issue binding notice on persons who potentially have claims against the United States. If such potential plaintiffs fail to appear, then their claims may be barred. Simply put, § 114(b) authorizes the government to invoke res judicata against persons not joined as parties only as a shield and not as a sword. The second portion, on the other hand, permits the court to issue a summons for persons against whom the United States wishes to assert a claim or contingent claim. Section 114(b) thus allows the government a means by which to offensively bind persons other than the plaintiff: by summoning them as third-party defendants.

Section 14(b) was eventually incorporated into the United States Code at 41 U.S.C. § 114, where it has remained with only minor alterations. *Compare* Contract Settlement Act § 14 ("Act") *with* 41 U.S.C. § 114. Within three years of the Act's passage, the Court of Claims undertook to incorporate the Act into its new Rules of the Court of Claims. In 1947, Court of Claims Chief Justice Marvin Jones appointed a two-man Committee of Commissioners to oversee promulgation of the new rules. 140 Ct.Cl. iii. A revised version of their draft was adopted on May 15, 1951. *Id.* at v. The 1951 version of the rule governing third-party practice appeared at Rule 19 and was promulgated "pursuant to 41

---

5. Section 114(b) was later construed to apply to noncontractual as well as contractual claims. *Bowser, Inc. v. United States,* 190 Ct.Cl. 441, 445, 420 F.2d 1057 (1970), *on reconsideration,* 192 Ct.Cl. 377, 427 F.2d 740.

U.S.C. 114." [6] However, the drafters deviated somewhat from the provisions of the Act in formulating the rule. Apparently attempting to avoid the incongruity between the language of the Act that seemed to permit plaintiffs to summon third parties and the Court of Claims precedent forbidding it,[7] the drafters of the Rules of the Court of Claims replaced the word "summon" with the word "notify." When they incorporated the devices available exclusively to the United States, the drafters removed the references to "notice." The effect of these changes was to create out of the devices promulgated in § 114(b) two hybrid procedures, neither of which evenly tracked the provisions of the Act.

The rule promulgated in 1951 was revised in 1953,[8] 1957,[9] 1964,[10] and 1969,[11] but emerged in 1983 [12] in much the same form as its counterpart from three decades earlier. Like the original Rule 19, the modern

Rule 14 contemplates two third-party practices. Under Rule 14(a)(1), notification of nonparties is permitted on motion of either party. If the nonparties wish to participate, the rule appears to require them to take an additional step, i.e., to "appear as a party and assert an interest therein." RUSCC 14(a)(1).

Rule 14(c)(1), which amplifies the effect of Rule 14(a)(1), explains that "in case the third party fails to appear and assert a claim in the subject matter of the action, the claim or interest of the third party therein shall forever be barred." RUSCC 14(c)(1). This procedure thus appears to prevent nonparty entities from asserting claims and raising defenses in later litigation if they failed to appear in the former action. This has been the construction put on the rule by subsequent case development.[13] However, the Supreme Court's re-

6. The full text of Rule 19 reads as follows:
   **(a) When Third Parties May Be Brought In:** Pursuant to 41 U.S.C. 114, the Court on its own motion or on the motion of either party, may (1) notify any and all persons with legal capacity to sue and be sued and who appear to have an interest in the subject matter of any pending suit to appear as a party or parties and assert their interest therein; or (2) on motion of the Attorney General may summon any such third person or persons against whom the United States may be asserting a claim or contingent claim for the recovery of money paid by the United States in respect of the transaction or matter which constitutes the subject matter of the suit to appear as a party or parties and defend their interest, if any, in such suit. Such motion if made by the United States, shall be filed on or before the date on which it is required to answer. R.Ct.Cl. 19(a), 118 Ct.Cl. 1, 17 (1950).

7. Well-established Court of Claims precedent prohibited plaintiffs from summoning third-party defendants. *See Rolls–Royce Ltd. v. United States,* 176 Ct.Cl. 694, 698, 364 F.2d 415 (1966), *Oliver–Finnie Co. v. United States,* 133 Ct.Cl. 555, 137 F.Supp. 719 (1956), *Weis v. United States,* 130 Ct.Cl. 815 (1955). Such precedent overrode the plain language of the statute because the Act specifically provided that "no person shall recover judgment on any claim, or on any interest in any claim, in said court which such person would not have had a right to assert in said court if this section had not been enacted." Contract Settlement Act of 1944 § 14(c), *see also* 41 U.S.C. § 114(c).

8. R.Ct.Cl. 19, 126 Ct.Cl. 1, 17 (1953).

9. R.Ct.Cl. 19, 140 Ct.Cl. 1, 19 (1957).

10. R.Ct.Cl. 23, 165 Ct.Cl. 1, 21 (1964).

11. R.Ct.Cl. 41, 189 Ct.Cl. 1, 21 (1969).

12. RUSCC 14, 1 Cl.Ct. XXV, LII–LIII (1983).

13. Cases in which the court asserted the authority to issue binding notice to nonparties against whom the United States potentially had claims include *Carrier Corp. v. United States,* 209 Ct.Cl. 267, 534 F.2d 250 (1976) (based on R.Ct.Cl. 41(a)(1) (1969)), and *Bowser, Inc. v. United States,* 190 Ct.Cl. 441, 420 F.2d 1057 (1970) (based on 41 U.S.C. 114(b)), *on reconsideration,* 192 Ct.Cl. 377, 427 F.2d 740, *accord RSH Constructors,* 20 Cl.Ct. 1, 8 (1990). The *Carrier Corp.* court stated:

   Under Rule 41(a)(1) a notice may be issued to any person "who appears to have an interest in the subject matter of any pending suit to appear as a party and assert his interest therein." A person against whom the United States alleges a nonfrivolous claim for indemnity is a party who "*appears*" to have such an interest. This court has no jurisdiction to decide whether the claim for indemnity is in fact valid, but on the other hand if such parties are not given notice under Rule 41(a)(1) they will not be bound by our rulings on the issues if and when the United States sues them in another forum. In these circumstances it is better to send notices to such parties whenever the indemnity allegations seem nonfrivolous, and to allow the noticed party to decide for itself whether it will run the risk that the Government's indemnity

cent ruling in *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1990), discussed below, casts doubt on the validity of those cases.

Rule 14(a)(2) now delineates the procedure available exclusively to the government. As explained above, the rule specifies that the summoned entity is a third party *against* whom the United States is asserting a claim or contingent claim arising out of the plaintiff's claim against the government. *Martin* has no implications for 14(a)(2), because the rule provides for summons of the entity as a party and not merely for notice. Significant further discussion of Rule 14(a)(2) is therefore unnecessary, because the government did not make a Rule 14(a)(2) motion. We concentrate instead on *Martin*'s implications for Rule 14(a)(1).

In *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), white firefighters in Birmingham, Alabama alleged that the defendants, the city and county personnel board, were hiring and promoting blacks less qualified than the whites in violation of Title VII of the Civil Rights Act of 1964. The defendants argued that these practices derived from a consent decree that resolved a previous dispute between the defendants and minority firefighters. The United States District Court for the Northern District of Alabama held that because the plaintiffs had notice of the minority firefighters' suit, the plaintiffs were precluded by that judgment from thereafter challenging acts required by the consent decree. On appeal, the Eleventh Circuit reversed. *In re Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492 (11th Cir.1987). The court declared that the white firefighters could not be precluded from challenging the consent decree when they had been neither party to nor in privity with a party to the suit. *Birmingham Reverse Discrimination*, 833 F.2d at 1498. The Supreme Court granted certiorari and affirmed the Eleventh Circuit, holding that:

> [A] party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined.... Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.

*Martin v. Wilks*, 490 U.S. 755, 763–65, 109 S.Ct. 2180, 2185–86, 104 L.Ed.2d 835 (1989).

The general rule recited in *Martin* is not absolute. In a footnote, the Supreme Court commented as follows:

> We have recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party. See *Hansberry v. Lee*, 311 U.S. 32, 41–42 [61 S.Ct. 115, 118, 85 L.Ed. 22] (1940) ("class" or "representative" suits); Fed.Rule Civ.Proc. 23 (same); *Montana v. United States*, 440 U.S. 147, 154–155 [99 S.Ct. 970, 974, 59 L.Ed.2d 210] (1979) (control of litigation on behalf of one of the parties in the litigation). Additionally, where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or

---

claim if ultimately made will not be sustained.

*Carrier Corp.*, 209 Ct.Cl. at 269–70, 534 F.2d 250. Cases in which the court asserted the authority to issue binding notice to nonparties potentially having claims against the United States include *Continental Casualty Co. v. United States*, 145 Ct.Cl. 99, 101, 169 F.Supp. 945 (1959) (based on R.Ct.Cl. 19(a)(1) (1957)), and *Del–Rio Drilling Programs, Inc. v. United States*, 17 Cl.Ct. 844 (1989) (based on Rule 14(a)(1)). The *Del–Rio* court stated:

> While the defendant argues that the use of RUSCC 14(a)(1) is appropriate only when a third party faces potential liability, *citing Myr-*

*tle Beach Pipeline Co. v. United States*, 6 Cl.Ct. 363 (1984); *USA Petrochem Corp. v. United States*, 4 Cl.Ct. 345 (1984); *Midwest Industrial Painting of Florida v. United States*, 1 Cl.Ct. 209 (1983), both the rule itself and case law demonstrate that notice should be issued so that a third party has an opportunity to *either assert or defend* any interest in the subject matter litigation.... [t]hird parties who fail to appear may nonetheless be bound in a later suit in another court by certain determinations made *in this court* without that third party's presence.

*Del–Rio*, 17 Cl.Ct. at 848 n. 8, 849 (emphasis in original).

probate, legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process. See *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 529–530, n. 10 [104 S.Ct. 1188, 1198, n. 10, 79 L.Ed.2d 482] (1984) ("proof of claim must be presented to the Bankruptcy Court ... or be lost"); *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478 [108 S.Ct. 1340, 99 L.Ed.2d 565] (1988) (nonclaim statute terminating unsubmitted claims against the estate). *Martin,* 490 U.S. at 762 n. 2, 109 S.Ct. at 2184 n. 2. However, just as in *Martin,* "[n]either of these exceptions ... applies in this case." *Id.* This court agrees that "RUSCC 14(a)(1) and 14(c)(1) do not fall, either directly or by analogy, into one of the few exceptions listed in *Martin* to this general rule." *RSH Constructors,* 20 Cl. Ct. at 6.

Defendant mistakenly asserts that this court's issuance of Rule 14(a)(1) notice to Sur–Tech and Whitfield was exempt from the *Martin* rule because notice was authorized by a "special statutory framework enacted by Congress," [14] namely, 41 U.S.C. § 114(b), *supra.* But as the government suggested in its motion to notice, the United States has potential claims *against* Sur–Tech and Whitfield. Thus, even if the Act constitutes a "special statutory framework" or falls within some other alleged exception to *Martin,* the government's position still fails. Section 114(b) does not permit the government to issue binding notice to nonparties against whom the government has a claim or contingent claim as the government supposes.[15] To be affirmatively bound in a subsequent indemnity claim brought by the government, such entities must, pursuant to both § 114(b) and Rule 14(a)(2), be issued a summons as a party in accordance with *Martin.*

Defendant attempts to distinguish *Martin* on the ground that in *Martin,* the plaintiffs (nonparties to the underlying action) received no "formal notice," while in the present case, formal notice was given. However, *Martin* made no distinction between "formal notice" and ordinary notice. Instead, the Court preempted defendant's argument by the sweeping statement, "he must be joined."

The Claims Court first considered the effect of *Martin* on Rule 14(a) in *RSH Constructors, Inc. v. United States,* 20 Cl.Ct. 1 (1990). There, nonparties moved to quash notice requested by the plaintiff contractor and the defendant under Rule 14(a)(1). Judge Futey concluded that while *Martin* involved Rule 19 joinder and Rule 24 intervention, the holding has application elsewhere:

> Although a civil rights case involving a consent decree, *Martin* was based on the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." This rule is part of our "deep-rooted historic tradition that everyone should have his own day in court." The Supreme Court found that this general rule was incorporated into the Federal Rules of Civil Procedure. Therefore, RUSCC 14(a)(1) and 14(c)(1) can be applied only in accord with this "principle of general application in anglo-American jurisprudence."

*RSH Constructors,* 20 Cl.Ct. at 5–6, *quoting Martin,* 490 U.S. at 761–62, 109 S.Ct. at 2184.

Defendant points out that the *Martin* court did not invalidate any portion of the Federal Rules of Civil Procedure. *See Brunswick Corp. v. United States,* 22 Cl. Ct. 278, 288 (1991) ("Clearly, the Supreme Court would not have nullified a provision of the Federal Rules of Civil Procedure *without saying it was doing so.*" (Empha-

---

**14.** *Martin v. Wilks,* 490 U.S. 755, 765–66, 109 S.Ct. 2180, 2186, 104 L.Ed.2d 835, *citing Penn–Central Merger and N & W Inclusion Cases,* 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968) (railroad reorganization litigation).

**15.** Whether the Claims Court may, on motion of the government, notify and bind nonparties who appear to have a claim or interest against the United States (i.e., use res judicata as a shield) under Rules 14(a)(1) and 14(c)(1) or § 114(b) without violating *Martin* is not for this court to decide. Nor, as explained above, does this court's ruling or the decision in *Martin* affect practice under Rule 14(a)(2).

sis in original)). But Rule 14 sets out a unique procedure not available within the Federal Rules. In any event, the fact that the procedure was not at issue in *Martin* cannot preclude consideration of the constitutional implications for practice in this court.[16]

■ This court concurs with the reasoning of Judge Futey that "[b]inding contentions of fact and law over a non-party that occur under RUSCC 14(a)(1) and 14(c)(1), '[conclude] the rights' of a non-party.... in violation of *Martin*." *Id.*, at 7. However, this court disagrees with the logic of *RSH Constructors* in one respect. We do not hesitate to apply the *Martin* rule, even when doing so calls Court of Claims precedent into question.[17] Court of Claims decisions are not binding to the extent that they clearly conflict with subsequent decisions of the Supreme Court.

■ The government's final argument is that the motion to quash calls for an advisory opinion. It correctly points out that the opportunity to issue notice arises under Rule 14(a)(1), whereas the fallout of the notice, once issued, comes at a later time, and is controlled by Rule 14(c)(1): The claims of noticed parties "shall be forever barred." The government contends that it is premature for the court to speculate on what some other court might later do about the defendant's contingent indemnity claims against Sur–Tech and Whitfield. In this limited sense, the government's position is correct. The utility of notice under Rule 14(a)(1) would not be felt in this proceeding, but in a subsequent action. The

only issue before this court, according to the government, is whether Sur–Tech and Whitfield are "alleged to have an interest in the subject matter." *See* RUSCC 14(a)(1).

The court does not have to speculate, however, on the government's purpose in invoking Rule 14(a)(1). It is to bind Sur–Tech and Whitfield to indemnify it in the event the government is found liable here. Nor does it require any speculation to conclude that the government has, in light of *Martin*, chosen the wrong device to achieve that end. The government asks the court to endorse a procedure that is useless, but not benign. Ignoring the infirmity built into a notice issued for the purposes announced has the potential for causing confusion and for wasting time and resources. In this regard, the utility vel non of notice under Rule 14(a)(1)—at least under the present circumstances, where the noticees are unwilling to join voluntarily and the government hopes to bind them offensively—does in fact create a present issue. Only if the court permitted the notices to stand but then went on to speak to the future effect of its ruling would the decision here be gratuitously declaratory.

## CONCLUSION

The motions to quash are due to be granted because issuing mere notice to facilitate the government's announced intention of binding Sur–Tech and Whitfield as third party defendants would be pointless. The government has at its disposal a device by which it may bind third parties against

---

16. Although not expressly articulated, the plain constitutional basis of *Martin v. Wilks* is the Due Process clause of the Fourteenth Amendment. *See Martin*, 490 U.S. at 761–62, 109 S.Ct. at 2184, citing, e.g., *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969), *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940).

17. Judge Futey granted the motions to quash advanced by the nonparties whom the plaintiff wished to notice on two grounds: the *Martin* ground discussed above and the ground that the court cannot issue notice to a nonparty against whom only the plaintiff has a claim. However, he denied the motion to quash advanced by the

nonparty whom the government wished to notice on the ground that the nonparty was the plaintiff's surety and in the event that the defendant's counterclaim was successful, the nonparty could then reimburse the defendant. Although Judge Futey believed that notice to such nonparties violated *Martin*, he deferred the issues of "the subsequent validity and usefulness of the notice provision(s) of the RUSCC for a higher tribunal to decide." *RSH Constructors*, 20 Cl.Ct. at 8, citing *South Corp. v. United States*, 690 F.2d 1368, 1370 n. 2 (Fed.Cir.1982). He relied instead on Court of Claims precedent permitting Rule 14(a)(1) notice. *Id.*, citing *Carrier Corp. v. United States*, 209 Ct.Cl. 267, 269, 534 F.2d 250 (1976).

whom it has a claim or contingent claim: Rule 14(a)(2). It should be noted, however, that the court's ruling does not speak to the use of Rule 14(a)(1) notice purely as a courtesy to non-parties who may wish to join the proceeding, or to the defensive use of judgments when there has been notice under Rule 14(a)(1).

Decrees of the United States Claims Court are unlike "the laws of the Medes and Persians, which altereth not." [18] They may be reconsidered. Upon reconsideration, it is clear to this court that so long as Whitfield and Sur–Tech are not parties, they cannot be bound for purposes of a subsequent government-initiated indemnification action by determinations of fact and law made here unless they voluntarily appear as parties (which they will not). *Martin* does not permit such an effect. The court declines to maintain a notice that has no legal significance and would only engender confusion and judicial waste. The motions to quash notice to Whitfield and Sur–Tech are therefore granted.

---

18. Daniel 6:8 (King James Version).